# SUSAN R. WILLDEY *et al.*

### *v.*

# ANGELINE WEBSTER *et al.*

SWORN ANSWER IN CHANCERY — *degree of proof required to overcome it.* It requires two witnesses, or the evidence of one and other circumstances equal to another, to overcome a sworn answer in chancery.

WRIT OF ERROR to the Circuit Court of Tazewell county; the Hon. JAMES HARRIOTT, Judge, presiding.

The opinion of the court states the case.

Mr. C. A. ROBERTS and Mr. N. W. GREEN, for the plaintiffs in error.

Mr. B. F. PRETTYMAN, for the defendants in error.

Mr. CHIEF JUSTICE WALKER delivered the opinion of the Court:

This was a bill in equity, filed by defendant in error against plaintiffs in error, for a specific performance of a contract. The bill alleges, that Angeline Webster entered into a contract with one Jonathan B. Willdey for the purchase of a tract of land, for which she was to pay the sum of two hundred dollars, and upon payment being made, that he was to execute a conveyance of the title by a deed with covenants of general warranty. And to evidence the agreement he made and delivered to her this obligation:

" Know all men by these presents, that Jonathan B. Willdey of the county of Tazewell and State of Illinois, for and in consideration of the sum of two hundred dollars, *have this day agreed to sell* Angeline Webster, of the county of Philadelphia and State of Pennsylvania, the following tract of land, to wit: South half of the north-east quarter of section 7, in township 23, of range No. 6 west, containing eighty acres, in Tazewell county, State of Illinois; *now provided, that the said Angeline*

*Webster* or her heirs shall pay, or cause to be paid, to the said Jonathan B. Willdey or his heirs, executors or administrators, at Spring Lake, Tazewell county, Illinois, the above sum, then Jonathan B. Willdey firmly binds himself, his heirs, executors or administrators, under the penalty of four hundred dollars, to convey, by a good deed of warranty, with covenants, the above described lands to the said Angeline Webster, her heirs and assigns.

Sealed and delivered, this 22d day of Sept., A. D. 1855.

JONATHAN B. WILLDEY."

The bill alleges the death of Willdey, and that he was seized of the real estate, leaving a widow and two heirs, who are made defendants. That administration had been granted on his estate to defendant Clark; that the purchase money had been paid to intestate in his life-time, but that he had not conveyed the lands to complainant before his death, nor had his heirs since his death. The bill prays that the land may be conveyed to complainant according to the tenor of the bond.

The widow, in her answer, denies the execution of the contract by her deceased husband. She alleges that he removed to Tazewell county before the time when the bond bears date, and that he was dead more than a month before the date of the certificate of acknowledgment annexed to the obligation for a conveyance.

An amended bill was afterward filed, in which it was alleged that complainant advanced the money to deceased to enter this and other land, and that he was to convey this tract to complainant. That he was inexperienced in drawing such instruments as the bond, and did not draw it so as to express the contract, but so as to require the payment of the money before the conveyance should be made, when it should have acknowledged the receipt of the consideration for the land, before the execution of the bond. The answers denied the allegations of the amended bill. Replications were filed to the answers. On a hearing, the court below decreed a conveyance of the land to

complainant, and defendants prosecute this writ of error to reverse the decree.

On the hearing, King testified that defendant in error advanced to Willdey in his life-time $200, with which to enter and improve the land, and that it was agreed that he should convey one-half of the quarter to complainant; that he entered the quarter for forty dollars; but died before he improved it; that he was acquainted with the handwriting of Willdey; that he had seen him write his name once, and believed the signature to the bond was his handwriting. The answer of Mrs. Willdey denies that he executed the bond, as well as the other allegations of the bill, and the answer is called for and made under oath. It then required two witnesses, or the evidence of one, and other circumstances equal to another, to overcome the answer. Here is the evidence of one witness, but we fail to find the other necessary facts to overcome this denial. The bond itself does not support King's evidence of its execution, as he and two other witnesses testify that Willdey died in December, 1855, while the bond purports to have been acknowledged on the 23d day of January following. Here we have proof that the acknowledgment could not have been made by Willdey, nor do we find in the evidence any thing to rebut the evidence that this certificate was a forgery, or, at least, made by an officer when Willdey was not present. The very least that can be said is that it must have been obtained by fraud, in procuring some one to personate Willdey, and the officer was thus imposed on, by the fraud of complainant. Otherwise it must be a forgery, or, if made by an officer of the law, he has lent himself to a corrupt and base purpose. The execution of the bond was not proved.

Nor does King's testimony as to the agreement support the allegations of the original bill. It does not proceed upon such an agreement, but only on the bond. And the allegations of the amended bill, having been denied by the sworn answer, his evidence of the agreement to enter the land and the advance of the money, was insufficient proof to authorize a decree of specific performance. Nor does the production of

the bond afford evidence to support King's testimony, as the bond when produced seems to be a forgery or a gross and outrageous fraud.

The letters of Mrs. Willdey to Webster, whether to the complainant or some one else does not appear, are indefinite, and do not, in terms, refer to this land. They refer to money advanced, to a bond, and she makes an offer to pay $200 when she should be able. But she at the same time denies that he can enforce the contract, as the lands were entered under the pre-emption laws. But, if it was conceded that these letters referred to this land, they could in no event bind the minor heirs. No admission she could make would affect their title. Their rights, whatever they were, became fixed at the death of their father, and defendants in error could only obtain such relief as their case then entitled them to receive. Their rights could neither be contracted, or admitted away by their mother. The record does not contain sufficient proof to sustain the decree against the minor defendants, and the decree must be reversed and the cause remanded.

*Decree reversed.*